**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DHP HOLDINGS II CORP., et al., | ) | Case No. 08-13422(MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ——————————————————— | ) | |
| | ) | |
| DHP HOLDINGS II CORP., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No. 09-51529(MFW) |
| | ) | |
| THE HOME DEPOT, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————————— | ) | |

**MEMORANDUM OPINION**[1]

Before the Court is the Motion of Home Depot, Inc. ("Home Depot") to transfer venue of this adversary proceeding to the United States District Court for the Northern District of Georgia.  DHP Holdings II Corp., DESA LLC, DESA Heating LLC, DESA Specialty LLC, and DESA IP LLC (collectively, the "Debtors") oppose the motion.  The Court will grant the motion for the reasons discussed below.


I.   BACKGROUND

On December 29, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the

---

[1]  The Court is not required to state findings of fact or conclusions of law pursuant to Rule 7052(a)(3) of the Federal Rules of Bankruptcy Procedure.

Bankruptcy Code.  The Debtors are manufacturers and distributors of several products including heating appliances and lawn and garden electrical products.

Prior to the Petition Date, the Debtors and Home Depot entered into a Supplier Buying Agreement (the "SBA") under which the Debtors supplied certain products to Home Depot.  The SBA sets forth the terms and conditions of the parties' transactions, and it contains, among other things, a choice of law provision and a forum selection clause providing for resolution of disputes in Georgia.[2]

Post-petition, the Debtors filed a Complaint to recover an account receivable allegedly owed by Home Depot.  According to the Complaint, the Debtors supplied products to Home Depot from as early as 2007 through February 2009.  The Debtors claim that Home Depot owes an outstanding balance in the amount of approximately $5.5 million.  In the Complaint, the Debtors assert three causes of action: (1) turnover of property under section 542(b) of the Bankruptcy Code, (2) breach of contract for failure to pay the account receivable balance, and (3) disallowance of any claim of Home Depot under section 502(d) of the Bankruptcy Code until it pays the account receivable balance.

---

[2]  The forum selection clause states that "the parties agree that any civil action to decide such dispute shall be brought in either the US District Court for the Northern District of Georgia, Atlanta Division, or the Superior Court of Cobb County, Georgia."  SBA § 14.6(c).

Home Depot filed an answer in which it admits that it received certain products for which it has not paid the Debtors. Home Depot generally denies that it is obligated to pay the asserted amount, however, and contends that it has setoff and recoupment rights under the SBA and common law. Home Depot also asserts improper venue pursuant to the forum selection clause, raises defenses under section 542(c), and demands a jury trial.

On January 25, 2010, Home Depot filed the instant motion to transfer venue to the United States District Court for the Northern District of Georgia, pursuant to the forum selection clause. The Debtors oppose the motion. Briefing was completed on March 22, 2010, and the matter is now ripe for decision.

II. <u>JURISDICTION</u>

The Court has jurisdiction over this Motion to transfer venue, which is a core proceeding. <u>Brizzolara v. Fisher Pen Co.</u>, 158 B.R. 761, 767 (Bankr. N.D. Ill. 1993) (holding that "motions for change of venue, abstention, and remand are core proceedings under 28 U.S.C. § 157(b)(2)(A)"); <u>Lipshie v. AM Cable TV Indus., Inc. (In re Geauga Trenching Corp.)</u>, 110 B.R. 638, 653 (Bankr. E.D.N.Y. 1990) (concluding that motion to change venue did not involve adjudication of a right that may be heard only by an Article III Judge and, therefore, was a core matter despite the omission of the Bankruptcy Court from § 1412.).

III. <u>DISCUSSION</u>

The Court's analysis begins with the statutory provisions that govern transfer of venue.  Section 1412[3] is the provision dealing with change of venue in a case or proceeding under title 11, while section 1404(a)[4] is the general change of venue statute applicable to all civil cases.  The analysis under either section is essentially the same, turning on the same issues of "the interest of justice" and "the convenience of the parties," except that section 1412 does not require that the action could have been brought in the transferee district.  <u>See, e.g.</u>, <u>In re Manville Forest Prods. Corp.</u>, 896 F.2d 1384, 1390-91 (2d Cir. 1990); <u>Thomson McKinnon Sec., Inc. v. White (In re Thomson McKinnon Sec., Inc.)</u>, 126 B.R. 833, 834-35 (Bankr. S.D.N.Y. 1991).

Courts have considered several factors in analyzing motions to transfer venue.  <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 879 (3d Cir. 1995) (stating that courts consider variants of the

---

[3]  Section 1412 provides: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."  28 U.S.C. § 1412.

[4]  Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).

4

private and public interests[5] protected under section 1404(a)).
The court should consider all relevant factors and has discretion
to determine "on an individualized, case-by-case basis, whether
convenience and fairness considerations weigh in favor of
transfer." Id. at 883 (citing Stewart Org., Inc. v. Ricoh Corp.,
487 U.S. 22, 30-31 (1988)). See also Hechinger Liquidation Trust
v. Fox (In re Hechinger Inv. Co. of Del., Inc.), 296 B.R. 323,
325 (Bankr. D. Del. 2003).

In this case, the SBA contains a forum selection clause.
The general rule is that a forum selection clause is prima facie
valid and should be enforced absent a strong showing that it
would be unreasonable under the circumstances. M/S Bremen v.
Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). Courts have held
that a forum selection clause is unenforceable where the clause
was procured through "fraud or overreaching" or where enforcement
of it is "so gravely difficult and inconvenient that [a party]
will for all practical purposes be deprived of his day in court."
Id. at 18. See also Foster v. Chesapeake Ins. Co., Ltd., 933

---

[5] The private interests include: the plaintiff's forum
preference, the defendant's preference, where the claim arose,
the convenience of the parties, the convenience of the witnesses,
and the location of books and records. Jumara, 55 F.3d at 879.
The public interests include: the enforceability of the judgment,
practical considerations, the relative administrative difficulty
in the two fora, the local interest in deciding local
controversies, the public policies of the fora, and the
familiarity of the trial judge with the applicable state law.
Id. at 879-80.

F.2d 1207, 1219 (3d Cir. 1991).  The Debtors do not allege fraud
or overreaching, but they argue that a forum selection clause
that is a part of a form contract not bargained-for should be
given less weight.  The Court disagrees.  The lack of actual
negotiations over the forum selection clause does not affect its
validity.  Id. (citing Carnival Cruise Lines, Inc. v. Shute, 499
U.S. 585 (1991)).

Further, the Debtors' argument is unpersuasive in this case
because the SBA was executed by two sophisticated commercial
entities and a form contract is reasonable in this context.  Home
Depot, as one of the largest retailers in the United States,
orders goods from hundreds of suppliers in virtually every state,
and it has an interest in keeping transaction costs low, which
also benefits its suppliers.  It was reasonable for the parties
to use Home Depot's form contract.  See Carnival Cruise, 499 U.S.
at 593 (holding that a forum selection clause in a form contract
may be permissible where it was reasonable for the parties to use
a standard contract under the circumstances).

On a motion to transfer venue, however, the presence of a
valid forum selection clause is not determinative, but is only a
significant factor in the court's analysis.  Stewart, 487 U.S. at
28-29 (holding that the Bremen standard is merely instructive
when considering a motion to transfer venue because the parties'
expression of their venue preference is one factor courts

6

consider).  Ultimately, "whether the action should be transferred involves a multi-factored test incorporating the forum selection clause as one facet of the convenience-of-the-parties consideration." Jumara, 55 F.3d at 880.

A.   Core v. Non-Core Proceeding

Courts are more likely to enforce a forum selection clause in a non-core matter. See, e.g., Statutory Committee of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating LLC), 285 B.R. 822, 837 (S.D.N.Y. 2002) (stating that the strong policy favoring the enforcement of a forum selection clause is not as strong in a core proceeding because enforcement would frustrate the bankruptcy policy of centralizing core matters). Cf. In re Exide Techs., 544 F.3d 196, 206 (3d Cir. 2008) (stating that the core or non-core distinction dictates the enforcement of forum selection clauses in considering a motion for remand or abstention) (citing Diaz Contracting, Inc. v. Nanco Contracting Corp. (In re Diaz Contracting, Inc.), 817 F.2d 1047, 1051-53 (3d Cir. 1987)).

The Debtors have styled their claim as an action to collect an account receivable and argue that, as such, it is a core proceeding. See, e.g., Oglebay Norton Co. v. Port (In re Onco Inv. Co.), 320 B.R. 577, 581 n.2 (Bankr. D. Del. 2005) (stating that an adversary to collect an account receivable is core); Miller v. Printech Instant Ads, Inc. (In re Lila, Inc.), 133 B.R.

7

588, 590 (Bankr. E.D. Pa. 1990) (stating that a "garden variety" action to collect a liquidated pre-petition account "may well be core").

Home Depot, however, argues that the current action is really a pre-petition breach of contract claim and therefore is non-core. See, e.g., Eastern Elec. Sales Co., Inc. v. General Elec. Co., 94 B.R. 348, 349 (E.D. Pa. 1989) (holding that an action to collect an account receivable in which the underlying transaction occurred pre-petition is non-core).

Courts determine whether a proceeding is core by consulting two sources. Halper v. Halper, 164 F.3d 830, 836 (3d Cir. 1999). First, a court must consult section 157(b) of title 28 which "provides an illustrative list of proceedings that may be considered 'core.'" Id. Second, the court must apply the Third Circuit's test to determine whether it is core: "a proceeding is core (1) if it invokes a substantive right provided by title 11 or (2) if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case." Id. (citing In re Guild & Gallery Plus, Inc., 72 F.3d 1171, 1178 (3d Cir. 1996)). Each cause of action or claim must be analyzed separately to determine if it is core or non-core. Id. at 839. A single cause of action may include both core and non-core claims. "The mere fact that a non-core claim is filed with a core claim will not mean the second claim becomes 'core.'" Exide, 544 F.3d at 206.

8

Therefore, it is insufficient merely to label the cause of action
as an action to collect an account receivable; rather, each claim
in the Complaint must be analyzed individually to determine its
substance.

      1.   <u>Turnover of property under § 542(b)</u>

    A turnover claim under section 542(b) is core.  28 U.S.C. §
157(b)(2)(E) (core proceedings include, "orders to turn over
property of the estate").  The Court must, however, analyze
whether the Debtors have properly invoked section 542(b) which
provides:

> Except as provided in subsection (c) or (d) of this
> section, an entity that owes a debt that is property of
> the estate and that is matured, payable on demand, or
> payable on order, shall pay such debt to, or on the
> order of, the trustee, except to the extent that such
> debt may be offset under section 553 of this title
> against a claim against the debtor.

11 U.S.C. § 542(b).

    "Many courts have wrestled with the question of whether an
account receivable falls within the parameters of § 157(b)(2) . .
. . [N]o clear consensus exists." <u>Allegheny, Inc. v. Laniado
Wholesale Co. (In re Allegheny, Inc.)</u>, 68 B.R. 183, 189 (Bankr.
W.D. Pa. 1986).  <u>Compare</u> <u>Onco Inv.</u>, 320 B.R. at 581 n.2 (stating
that turnover action seeking to recover account receivable is a
core proceeding) <u>with</u> <u>Valley Media, Inc. v. Toys R Us, Inc. (In
re Valley Media, Inc.)</u>, 289 B.R. 27, 31 (Bankr. D. Del. 2003)
(holding that turnover action to recover an account receivable

was non-core as it was merely a state law pre-petition contract claim) and Son v. Coal Equity, Inc. (In re Centennial Coal, Inc.), 278 B.R. 54, 58 (Bankr. D. Del. 2002) (holding that turnover action to recover amounts due under pre-petition invoices was non-core as it is merely a traditional state law claim for breach of contract).

In this case, Home Depot argues that the Debtors' turnover action is non-core because it is really just a state law breach of contract claim.  Home Depot disputes that it owes the debt and also asserts that it has setoff and recoupment rights under the SBA.  The Debtors respond that Home Depot's dispute is merely a general denial of liability and that its setoff and recoupment allegations are similarly vague.  For example, the Debtors assert that Home Depot's setoff rights are based on a post-petition credit memo Home Depot sent dated April 29, 2009, in the amount of $3.7 million.  The credit memo does not explain the basis of the credit nor has Home Depot alleged any facts related to the credit memo.  Therefore, the Debtors allege that the account receivable is really undisputed and that the action is, therefore, core.

The Court finds that Home Depot's answer disputing the account receivable and asserting entitlement to setoff and recoupment is sufficient to render the debt disputed.  An action is outside the scope of section 542(b) unless there is a debt

that is "matured, payable on demand, or payable on order."  11
U.S.C. § 542(b).  Most courts require that the debt be undisputed
for the action to be core.  See, e.g., U.S. v. Inslaw, Inc., 932
F.2d 1467, 1472 (D.C. Cir. 1991) (stating that "[i]t is settled
law that the debtor cannot use the turnover provisions of
[section 542] to liquidate contract disputes or otherwise demand
assets whose title is in dispute."); Centennial Coal, 278 B.R. at
58 (holding that an action to collect amounts owed under a pre-
petition agreement, that was disputed, is non-core); Asousa
P'ship v. Pinnacle Foods, Inc. (In re Asousa P'ship), 264 B.R.
376, 384 (Bankr. E.D. Pa. 2001) (stating that section 542(b) is
"available to debtors to obtain what is acknowledged to be
property of the bankruptcy estate.").  Therefore, the Court finds
that the Debtors' turnover action is a non-core claim because it
seeks to collect a disputed pre-petition account receivable.

The dispute raised by Home Depot about the amount due and
its entitlement to credits under the SBA convert this adversary
from a garden variety action to collect a sum admittedly due to a
breach of contract claim.  Cf. N. Pipeline Constr. Co. v.
Marathon Pipe Line Co., 458 U.S. 50, 89 (1982) (stating that
defendant could not unwillingly be brought before non-Article III
court on traditional breach of contract suit) (J. Rehnquist
concurring); Beard v. Braunstein, 914 F.2d 434, 443 (3d Cir.
1990) ("It is clear that to the extent that the claim is for

11

pre-petition contract damages, it is non-core."); Am. Home
Mortgage Inv. Corp. v. Lehman Bros. Inc. (In re Am. Home Mortgage
Holdings, Inc.), 388 B.R. 69, 94 (Bankr. D. Del. 2008)
(dismissing a turnover action because title to the debt was
disputed). Even if a contract claim is labeled as a turnover
proceeding, it is still non-core. Beard, 914 F.2d at 437-38
(conducting analysis of whether claim could exist outside
bankruptcy even though it was labeled a turnover action). In
this case, the action brought to collect the account receivable
could exist outside this bankruptcy case and, therefore, is non-
core.

The Debtors argue nonetheless that part of the claim is core
because it is to collect a post-petition account receivable. The
Debtors assert that approximately 25% of the account receivable
accrued post-petition because, although the products were
delivered prior to the Petition Date, the payment was not due
until after the Petition Date.[6] They contend that a debt
generally arises when a right to payment accrues even though it

_____

[6] The Debtors allege that they delivered $1,322,974 of
products prior to the Petition Date, for which payment was not
due until after the Petition Date. The Debtors also assert that
Home Depot placed some orders post-petition and that they
delivered $39,000 worth of products after the Petition Date.
Further, the Debtors claim to have issued nearly $800,000 in
credits to Home Depot post-petition, with the last credit issued
on April 15, 2009. Home Depot disputes that it had a meaningful
post-petition relationship with the Debtors and states that only
$7,645.27 of the Debtors' claim is for products shipped post-
petition.

is not fixed, liquidated or matured.  <u>See, e.g.</u>, <u>In re First</u>
<u>Jersey Sec., Inc.</u>, 340 F.3d 705, 511 (3d Cir. 1999) (determining
whether a debt was an antecedent debt for purposes of preference
action).  Under this view, however, only a de minimis portion of
the balance actually accrued post-petition.  The vast majority of
the goods were delivered pre-petition and the Debtors became
entitled to be paid for them when delivered, although the date of
payment may have been post-petition.  Because virtually all of
the balance accrued pre-petition, the Court determines that this
claim is really a turnover action for a pre-petition account
receivable, which as noted above is a non-core matter.

      2.   <u>Breach of contract</u>

The second count of the complaint asserts breach of contract
for failure to pay the balance on the account receivable.  The
Court concludes that this is also a non-core claim.  <u>See Beard</u>,
914 F.2d at 445 (concluding that action for pre-petition and
post-petition breach of a pre-petition contract was non-core).

      3.   <u>Disallowance of claim under § 502(d)</u>

The third claim is for disallowance of Home Depot's claim
under section 502(d), which provides in relevant part:

> the court shall disallow any claim of any entity from
> which property is recoverable under section 542 . . .
> unless such entity or transferee has paid the amount,
> or turned over any such property, for which such entity
> or transferee is liable under section . . . 542 . . .
> of this title.

11 U.S.C. § 502(d).

                        13

The Debtors seek to disallow Home Depot's claim against the bankruptcy estate, whether already filed or subsequently asserted, until the outstanding balance on the account receivable is paid. However, section 502(d) is triggered only after a judgment has been entered requiring the turnover of property to the estate. See, e.g., In re Odom Antennas, Inc., 340 F.3d 705, 708 (8th Cir. 2003) (holding that claim can be disallowed under § 502(d) only after claimant had been adjudicated liable and failed to pay). Here, the Debtors have not obtained an order requiring the turnover of the outstanding balance, and therefore section 502(d) is not available.

For the reasons discussed above, the Court concludes that all of the counts in the complaint are non-core.

B.   Transfer of Venue

In deciding a motion for transfer of venue, courts in the Third Circuit have considered numerous factors, including:

> (1) plaintiff's choice of forum, (2) defendant's forum preference, (3) whether the claim arose elsewhere, (4) location of books and records and/or the possibility of viewing the premises if applicable, (5) the convenience of the parties as indicated by their relative physical and financial condition, (6) the convenience of the witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, (7) the enforceability of the judgment, (8) practical considerations that would make the trial easy, expeditious, or inexpensive, (9) the relative administrative difficulty in the two fora resulting from congestion of the courts' dockets, (10) the public policies of the fora, (11) the familiarity of the judge with the applicable state law, and (12) the local interest in deciding local controversies at home.

14

Hechinger, 296 B.R. at 325-26 (<u>citing</u> <u>Jumara</u>, 55 F.3d at 879-80).

### 1.    Plaintiff's choice of forum

As to the first factor, "a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum."  <u>Jumara</u>, 55 F.3d at 880.  "[W]hile courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen" a different venue.  <u>Id.</u>  Therefore, this factor favors transfer of venue.

### 2.    Defendant's choice of forum

The defendant's choice of forum is generally given less weight.  <u>Hechinger</u>, 296 B.R. at 326.  However, the Court finds that this factor does weigh in favor of transfer of venue.

### 3.    Location where the claim arose

With respect to the third factor, the Debtors argue that this factor is neutral, as there is no one central location that gave rise to the account receivable because the products were shipped to Home Depot's stores across the country (including Delaware).  Further, the Debtors are Delaware corporations headquartered in Kentucky, and Home Depot is a Delaware corporation headquartered in Georgia.

Home Depot argues that, regardless of where the products were shipped, Home Depot is headquartered in Georgia.  Home Depot argues that there is no need to inspect products, so there is no

location or premise that is relevant.  Rather, the dispute will
be resolved through the reconciliation of the parties' documents
and basic contract interpretation, without a concern for where
the contract was formed, performed or breached.  See Onco Inv.,
320 B.R. at 580 (holding that where the issue will be resolved
through basic contractual interpretation and the location of the
underlying events is not germane, this factor is neutral).
Further, Home Depot argues that the only connection to Delaware
is the location of the Debtors' counsel.

Thus, the Court finds that there is no central location
where the dispute arose and that this factor is neutral.

4.   Location of books and records

In this case the location of books and records is not a
significant factor due to the ease of transporting documents.
See, e.g., HLI Creditor Trust v. Keller Rigging Constr., Inc. (In
re Hayes Lemmerz Int'l Inc.), 312 B.R. 44, 47 (Bankr. D. Del.
2004) ("[S]ince discovery is largely limited to 'paper
exchanges,' the physical location of books and records is of less
concern.").  Thus, the Court finds that this factor also does not
weigh in favor of either forum.

5.   Convenience of the parties

As to the fifth factor (the convenience of the parties as
indicated by their relative physical and financial condition),
the Court agrees with Home Depot that this factor weighs in favor

16

of Georgia.  The Debtors have already agreed that the Northern District of Georgia is a convenient forum in the forum selection clause.  See Jumara, 55 F.3d at 880; Ha-Lo Indus., Inc. v. Credit Suisse First Boston Corp. (In re Ha-Lo Indus., Inc.), Adv. Proc. No. 02 A 02455, 2003 WL 1824436, at *3 (Bankr. N.D. Ill. Mar. 14, 2003).  However, even where there is a contractual forum selection provision, the Court should consider if there is some inconvenience to the parties.  See Jumara, 55 F.3d at 882.

The Debtors' counsel is located in Delaware; Home Depot's counsel is in Texas.  The Debtors' operations are based in Kentucky; Home Depot's headquarters are in Georgia.  Based on the parties and their counsels' physical locations, the Debtors cannot show that Delaware is more convenient than Georgia. Further, it is insufficient for the Debtors to argue that Home Depot is better positioned to absorb the costs of litigation; instead the Debtors need to show "that the forum thus selected is 'so gravely difficult and inconvenient that [they] will for all practical purposes be deprived of [their] day in court.'" Foster, 933 F.2d at 1219 (quoting Bremen, 407 U.S. at 18). Because Home Depot's operation and employees that are familiar with this matter are located in Georgia, Home Depot has demonstrated that this factor favors transfer of venue.

17

6.    Convenience of the witnesses

The convenience of the witnesses' factor is relevant "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Jumara, 55 F.3d at 879. See also Onco Inv., 320 B.R. at 580. Neither party has demonstrated that there are potential witnesses that will not be available for trial either in Delaware or Georgia. Thus, this factor is neutral.

7.    Enforceability of any judgment

This factor also does not weigh in favor of either party. The Court has no reason to believe that a judgment in either jurisdiction would not be given full faith and credit. See, e.g., OCB Rest. Co. v. Vlahakis (In re Buffets Holdings, Inc.), 397 B.R. 725, 729 (Bankr. D. Del. 2008). Therefore, the Court finds that this factor also does not weigh in favor of either party.

8.    Practical considerations

As to the eighth factor (practical considerations that would make the trial easy, expeditious or inexpensive), the test is "whether it is actually easier, faster or less expensive to litigate this adversary in another forum." Onco Inv., 320 B.R. at 581 (emphasis added). Normally, judicial economy favors retaining the adversary in the forum where the action is commenced. However, little has progressed in this proceeding and

18

the Court is not familiar with the facts underlying the dispute.
Thus in this case, the Court would not be able to adjudicate the
matter more expeditiously than any other court.  See <u>Son v. Coal</u>
<u>Equity, Inc. (In re Centennial Coal, Inc.)</u>, 282 B.R. 140, 145
(Bankr. D. Del. 2002).

More importantly, Home Depot has demanded a jury trial and
does not consent to a jury trial in the bankruptcy court.  Absent
the express consent of both parties and a special designation by
the district court, this Court cannot hold a jury trial.
<u>Wakefern Food Corp. v. C & S Wholesale Grocers, Inc. (In re Big V</u>
<u>Holding Corp.)</u>, Civ. A. 01-233, 2002 WL 1482392, at *4 (D. Del.
July 11, 2002) (<u>citing</u> 28 U.S.C. § 157(e)).  As a result, Home
Depot has essentially removed this adversary from the
jurisdiction of this Court.  <u>Centennial Coal</u>, 282 B.R. at 145.
Whether in the District Court of Delaware or Northen District of
Georgia, a new judge and jury will need to become familiar with
the issues and facts of this adversary.  <u>Id.</u>  Therefore,
practical considerations do not favor retaining this adversary in
this forum.

9.  <u>Relative administrative difficulty</u>

With respect to the ninth factor (the relative
administrative difficulty in the two fora resulting from
congestion of the courts' dockets), "removal of a single
adversary proceeding will not alleviate this Court's heavy

19

caseload." Onco Inv., 320 B.R. at 581.  However, because of Home
Depot's jury demand, the question becomes the relative
administrative difficulty between the District Court of Delaware
and the Northern District of Georgia.  The Court takes judicial
notice of the fact that the District Court of Delaware currently
does not have all of its allowed judgeships filled and is itself
extremely overburdened.  Therefore, this factor favors transfer.

     10.  Public policies of the fora

    The Court agrees with the Debtors that the policy of this
forum favors centralization of bankruptcy matters, and "the
district in which the underlying bankruptcy case is pending is
presumed to be the appropriate district for hearing and
determination of a proceeding in bankruptcy." Manville, 896 F.2d
at 1391.  Ultimately, however, "the most important consideration
is whether the requested transfer would promote the economic and
efficient administration of the estate." In re Commonwealth Oil
Refining Co., Inc., 596 F.2d 1239, 1247 (5th Cir. 1979).

    As stated above, this adversary is a non-core matter.  It is
not closely tied with the administration of the estate; it is an
action to liquidate and collect an account receivable.
Therefore, this adversary will have little impact on the
efficient administration of the Debtors' bankruptcy case and
estate.  See, e.g., Centennial Coal, 282 B.R. at 145.  Cf.
Official Comm. of Unsecured Creditors of Integrated Health

<u>Servs., Inc. v. Elkins (In re Integrated Health Servs., Inc.)</u>,
291 B.R. 615, 620 (Bankr. D. Del. 2003) (finding that adversary
proceeding which sought in excess of $78 million would not have
significant impact on chapter 11 cases for purposes of abstention
request because it was only one of many adversary proceedings
filed in the case).  Further, the bankruptcy policy of
centralization of administration of the estate is not greatly
frustrated in transferring a non-core proceeding.  <u>See, e.g.</u>,
<u>AstroPower Liquidating Trust v. Xantrex Tech., Inc. (In re
AstroPower Liquidating Trust</u>), 335 B.R. 309, 329 (Bankr. D. Del.
2005).  Thus, the Court finds that while public policy favors
retaining this adversary in this forum, it does not have great
weight.

     11.  <u>Familiarity with applicable state law</u>

    As to the eleventh factor, the Court agrees with the Debtors
that the legal issues presented are neither complex nor novel.
However, because Georgia law governs the parties' contract, the
Court agrees with Home Depot that, should any such issues arise,
local judges are more familiar with the applicable state law.
<u>Centennial Coal</u>, 282 B.R. at 148.  Therefore, this factor favors
transfer.

     12.  <u>Local interest</u>

    As to the twelfth factor (the local interest in deciding
local controversies at home), the Court agrees with Home Depot

21

that this factor favors transfer to Georgia.  There is no Delaware controversy here, and because the SBA is governed by Georgia law, Georgia has a greater interest in deciding issues which may be governed by Georgia law.  Id.

After weighing the above factors, the Court finds that most of the factors either favor transfer or are neutral.  Upon consideration of the parties' venue preferences, the policy of this forum, and facts particular to this adversary, the Court finds that transfer is warranted.  Therefore, the Court will exercise its discretion and grant Home Depot's motion to transfer venue.


IV.  CONCLUSION

For the reasons set forth above, the Court will grant Home Depot's motion to transfer this adversary proceeding to the United States District Court for the Northern District of Georgia, Atlanta Division.

An appropriate order is attached.


Dated: September 9, 2010       BY THE COURT:

                               Mary F. Walrath
                               United States Bankruptcy Judge